IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs: | ) Case #:1:18CR00025-005 |
| | ) |
| ANDREA NICOLE STICKEL | ) |
| | ) |
| Defendant | ) |

### SENTENCING MEMORANDUM

**COMES NOW** the Defendant, Andrea Nicole Stickel, by counsel, and files this Sentencing memorandum on her behalf as follows:

I. **INTRODUCTION**

Andrea Nicole Stickel has pled guilty to one count of Conspiracy to Possess with Intent to Distribute 500 grams or more of Methamphetamine in violation of 21 U.S.C. § 846, 21U.S.C. § 841(b)(1)(A).

II. **SENTENCING LAW**

Section 3553(a) Title 18 of the United States Code instructs District Courts to impose a sentence "sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in Section 3553(a)(2). The four purposes of Section 3553(a)(2) are:

    (a) The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

    (b) The need to afford adequate deterrence to criminal conduct;

    (c) The need to protect the public from further crimes of the Defendant; and

    (d) The need to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the sentence minimally sufficient to comply with the Section 3553(a)(2) purposes of sentencing, the Court must consider several factors listed in Section 3553(a). These factors include (1) 'the nature and circumstances of the offense and the history and characteristics of the Defendant"; (2) "the kind of sentence available"; (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable [18 USC Section 3553(a)(1),(a)(3),(a)(5)-(7)].

Under 18 U.S.C. § 3661, "no limitations shall be placed on the information concerning the background, character and conduct of ( a defendant) which a court may receive and consider for the purpose of imposing an appropriate sentence". Typically this requires the court to consider factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and the circumstances of the defendant's family situation when growing up.

The District Court should calculate the applicable guidelines range as "the starting point" *Rita v United States,* 551 U.S. 338 (2007). However, the District Court "may not presume the Guidelines range is reasonable." *Id* at 351. Rather the District Court should make an "individualized assessment" and "consider all of the 18 U.S.C. §3553(a) factors." *United States v Gall,* 552 U.S. 38, 50 (2007).

III. **PERSONAL HISTORY, ADDICTION & CHARACTERISTICS OF DEFENDANT**

The formative, young years of Andrea's life were chaos at best and a "living hell" at worst. She grew up in an unstable home. Her parents divorced when she was three years old. She had intermittent contact with her father. (PSR 363). Her mom moved frequently due to their poverty and inability to pay living expenses (PSR 363). Tragically, as a juvenile, she was sexually molested by her step-father. (PSR 363). Given that environment, it is not surprising that her sister is incarcerated for federal drug convictions and her brother was murdered. (PSR 362). Even her mother has a prior federal court drug conviction. (PSR 363).

Andrea is a drug addict. Her history of substance abuse began at the age of sixteen years when she began smoking marijuana. (PSR 374). Cocaine use began at age eighteen and crack cocaine at thirty. (PSR 376). Her daily use of meth began at age of thirty-five years. (PSR 377). She later began using heroine and opiates on a daily basis. (PSR 378). She has had at least two serious overdoses. One led to her hospitalization in 2018. (PSR 380). Andrea has participated in some outpatient mental health treatment, but has had no significant drug rehabilitation or treatment. She is asking the Court to request the Bureau of Prisons allow her to participate in all available drug treatment programs.

While being high on methamphetamine is never a legal defense, it is undisputed that meth users have poor judgment. In a recent article in the Journal of the American Medical Association, Dr. Milky Kohno published the results of a study he conducted at UCLA. Among other findings, he stated that methamphetamine users tend to do things they would never have thought about if they were sober. Compounds in the drug impaired functioning of the brain's frontal lobe, which controls judgment, impulse control, and our ability to determine the consequences of a situation. MRIs of the brains of meth users showed a lack of sensitivity for risk and reward in the right dorsolateral pre frontal cortex, the region of the brain responsible for emotional impulses. Some chemical and molecular changes to the brain caused by chronic methamphetamine use can take over a year to reverse. (Kahno M., Et Al Imaging Examines Risky Decision Making in Brains of Methamphetamine Users, JAMA Psychiatry, (2014).

My take way from this article and my point to the Court is that Andrea has now been drug free since October, 2018. She is in fact a "different" person. She has visibly changed. During all of my encounters with Andrea she has been polite, courteous, respectful and able to assist me with her defense. She asks detailed and penetrating questions. She even shows appropriate social interaction by asking me about my family and sharing about her family. My second point to the Court is, all intoxicating substances impair judgment. However, methamphetamine is particularly devastating to the central nervous system and to the process of making good decisions. Though that impairment is not a defense, I do ask the court to

consider it in terms of mitigating the sentence. People addicted to meth do not make good decisions. I know I am stating the obvious, but I think it is worth the Court's consideration. People off of meth are very different than the people they were when they were on meth.

Whether we use the word tsunami, tidal wave or epidemic they are all inadequate to describe the sheer volume of criminal cases we deal with that involve drugs. In Wise County in the great majority of our criminal docket and cases drugs play a role. Everyday my son Ethan and I have a client with a drug issue. When I started practicing law in 1982 we didn't even have a charge of driving under the influence of drugs. Because we deal with this every day I've made every effort to educate myself as much as possible on the causes, treatment and consequences of addiction. Those efforts led me to the article I referenced earlier. Andrea was not a drug dealer who decided to become an addict. She was an addict with all the impaired judgement that comes with that and in that addicted and impaired state became a meth dealer. Meth addicts do not have good judgement. In Virginia law there are some situations where voluntary impairment can be considered by the Court as a mitigating factor, not a defense, but purely for mitigation , for example, it might be not first-degree murder if the offense was committed while the offender was drunk. Again, I am asking that you consider her significant and long standing addiction as a mitigating factor to reduce her sentence to the minimum mandatory.

## IV. CRIMINAL HISTORY OVERSTATED BY GUIDELINES.

Andrea's criminal history as calculated by the guidelines overstates the true nature and seriousness of her relatively minor past criminal conduct. She has a criminal history score of four (4) with an additional two (2) points added for being under a criminal justice sentence for misdemeanor shoplifting. That places her in a criminal history category of III. Typically, defendants in category III have much more serious convictions in their past than does Andrea. She has no prior felonies. Her record of misdemeanor driving under the influence convictions highlights her long history of substance abuse. Her convictions for driving with a suspended license are no doubt related to the suspensions associated with the DUIs.

I also ask the Court to note that one DUI (PSR 339) occurred on September 30, 2006 nearly ten years before the commencement of the instant offense. Had it been a few months earlier, that offense would not have added one (1) point to her criminal history.

The Sentencing Commission recognized that the Guidelines might not fairly address all cases and could in fact lead to Draconion results. It designed §4A1.3 to address situations where the defendant's history of traffic infractions and other relatively minor convictions places the defendant in a criminal history category usually reserved for those with substantially more serious criminal histories. Andrea believes her situation is one such case and asks that the Court depart below the applicable guideline range pursuant to this Section.

Departure under §4a1.3 is specifically authorized by the Sentencing Guidelines whenever the computed criminal history 'significantly under-represents' or 'significantly over-represents' the seriousness of defendant's criminal history or the likelihood that the defendant will commit further crimes. "Criminal history" is, relatively, one of the most flexible concepts in the guidelines. While it is possible to classify the severity of current federal offenses with a reasonable degree of precision, mathematically accurate evaluation of the countless possible permutations of criminal history, involving offenses of high and petty nature committed in numerous jurisdictions, would be at best unwieldy. The Sentencing Commission recognized this difficulty, and though it prescribed a mathematical method to calculate criminal history, it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground of departure from the raw criminal history score. *United States v Pinckney,* 938 F. 2ds 519 (4th Cir. 1991).

V.     THE MINIMUM MANDATORY SENTENCE IS SUFFICIENT TO COMPLY WITH THE PURPOSE OF SENTENCING UNDER 18 U.S.C. §3553(a)

A sentence of ten years is more that sufficient to reflect the seriousness of Andrea's crime. It would promote respect for the law, afford deterrence, protect the public and allow for rehabilitation. It would be by far the most lengthy sentence she has ever received.

Justice and mercy are not mutually exclusive. Andrea is forty-two years old. If she is

sentenced to ten years she will be fifty-two years old when released. Her crime is serious, she had the misfortune of being born into a bad situation that only got worse with age. Nevertheless, she has fully accepted responsibility for her conduct and has tried to make amends for her crime by among other things entering her plea and assisting the government. She is prepared to be punished.

The issue is whether the minimum sentence of ten years is sufficient or if a sentence within the guideline range is necessary. Why should ten years be enough? My first thought is, why not? What purpose would the extra time serve? I suspect the government would argue because that's what the guidelines say. There was a time when the guidelines were mandatory. There's a reason they are now discretionary. It is intended for the court to see the whole story and set a sentence that is appropriate not just blindly follow the guidelines. As a fan of Greek Mythology, I am familiar with the story of Procrustes who invited travelers to his home and stretched or chopped off their body parts to fit in his iron bed. Hence, the adjective Procrustean which characterizes a pointless or ruthless demand for conformity. Not everyone fits the same bed and not everyone's guideline fits every situation. The government might argue that as long as she is in jail she can't commit new crimes. While that is certainly true, if we take that argument to its logical but absurd extreme, then no defendant would ever get out of jail. Every crime would carry a life sentence. That's clearly not what we as a society want and clearly not what would be fair. So why are ten years sufficient? First, that a lot of time; 3,650 days or 87,500 hours. My dad told me as he got older the faster time went. But, my clients that are incarcerated tell me in prison time slows down and every day is an eternity. I am guilty of not fully appreciating time as it affects prisoners. When we negotiate plea deals we throw numbers around for years and months and it's almost like we are gambling with house money. We have no skin in the game. It is not our time. Ten years is a lot of time.

### VI  COOPERATION

The issue involving the defendant's co-operation we addressed by a separate

addendum filed under seal herewith.

VII: CONCLUSION

For all the reasons stated above, Andrea asks the court for a downward departure, and a sentence not to exceed the mandatory minimum, recommend she be admitted to an appropriate treatment program within the Bureau of Prisons and be designated to a facility as near to Bristol, Tennessee as possible.

Respectfully Submitted

ANDREA NICOLE STICKEL

BY COUNSEL

BY:

/s/ Gregory M. Stewart
STEWART LAW OFFICE, P.C.
P. O. Box 616
Norton, Virginia 24273
Telephone #: (276) 679-1283
Fax #:        (276) 679-7432
E-Mail: stewart-law@hotmail.com
VSB#: 22413

### CERTIFICATE

I hereby certify that I have electronically filed the Sentencing Memorandum with the Clerk of the Court using the CM/ECF system which will send notification of such filings and send a copy of such filing to the Assistance United States Attorney for the Western District of Virginia, or other prosecutor, who is responsible for the handling of this case on this the 30th day of July, 2019.

/s/ Gregory M. Stewart